IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ERIC LAMONT CHISUM, #310799     *

      v.     *     CIVIL ACTION NO. DKC-09-1488

STATE OF MARYLAND, et al.     *
                                                                  ***

## MEMORANDUM OPINION

Plaintiff Eric Lamont Chisum ("Chisum"), an inmate at the North Branch Correctional Institution ("NBCI") maximum security prison, filed this 42 U.S.C. § 1983 civil rights action on or about May 30, 2009. He states that he has a serious mental disorder and complains that the NBCI Psychology and Classification Departments denied his psychiatric needs by falsifying a report that resulted in his removal from the NBCI Behavioral Management Program ("BMP"). Chisum sues the state of Maryland and three state employees, seeking $30,000.00 in damages and an injunction to obtain psychiatric treatment in a mental health hospital.

In response to the Complaint, Defendants have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. Paper No. 14. To date, the Motion remains unopposed.[1] Defendants maintain that Chisum failed to exhaust his administrative remedies and, in the alternative, he has failed to allege, and cannot show, that they were deliberately indifferent to his psychiatric needs. They present the Declaration of James K. Holwager, the Chief Psychologist for NBCI, along with the Declarations of Correctional Case Management Specialist Randy Durst,

---

[1] Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), on December 21, 2009, the court notified Plaintiff that Defendants had filed a dispositive motion, he was entitled to file opposition materials, and his failure to file an opposition or to show a genuine dispute of material fact would result in the dismissal of his case. Paper No. 15.

Sergeant Robert Harris, Mental Health Professional Counselor Laura Booth, and Inmate Grievance Office ("IGO") Executive Director Scott Oakley. *Id*., Exs. 1-3, & 5. The Declarations are accompanied by Chisum's mental health record, which primarily focuses on the 2008 and 2009 time period. *Id*., Ex. 4.

The case is presently ready for this court's consideration as to whether, under the appropriate summary judgment standard, Chisum has demonstrated triable issues of fact in regard to administrative exhaustion and his psychological care. No hearing is deemed necessary. *See* Local Rule 105.6. (D. Md. 2009).

Summary Judgment is proper if, viewed in a light most favorable to the nonmoving party, "the pleadings....and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Ross v. Communications Satellite Corp*., 759 F.2d 355, 364 (4th Cir. 1985). The nonmoving party is entitled to the most favorable inferences that may reasonably be drawn from the evidence, but the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another," *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). In essence, the inquiry of the court must focus on whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that only one party may prevail as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986). If the evidence is such that a reasonable jury could not return a verdict for the nonmoving party, summary judgment should be granted.

According to the unrefuted Declarations of Sgt. Harris and Director Oakley, Chisum has never filed an Administrative Remedy Procedure ("ARP") grievance regarding the denial of psychiatric or psychological services at the institution or IGO levels. *Id*. at Ex. 2 at pg. 2; Ex. 5. Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison

conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Proper exhaustion of administrative remedies demands compliance with an agency's deadlines and other critical procedural rules because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). Administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendant(s). *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

Chisum's claim falls under the exhaustion prerequisites of § 1997e(a), and must be dismissed unless he can show that he has satisfied the administrative exhaustion requirement or that Defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003). The Maryland Division of Correction provides for a grievance process. As noted under *Chase*, a Maryland inmate may satisfy exhaustion by seeking review of an ARP complaint denial from the Warden to the Commissioner and then appealing the Commissioner's decision to the IGO, the *final level* of appeal within Maryland's administrative grievance system for prisoners. *See Chase v. Peay*, 286 F.Supp.2d at 529 (emphasis added). Chisum does not refute the allegation that he failed to file an ARP regarding the issue in this case. He has plainly failed to

satisfy exhaustion requirements and has not shown that Defendants have legally given up their right to present this affirmative defense.[2]

Alternatively, the court finds no Eighth Amendment deprivation. As an inmate sentenced to confinement, Chisum is entitled to receive reasonable treatment for his serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A constitutional deprivation is shown by establishing Defendants' actual knowledge or awareness of an obvious risk to Chisum's serious medical need and their failure to take steps to abate that risk. *See Farmer v. Brennan*, 511 U.S. 825, 834-836 (1994). When evaluating a mental health claim, this circuit continues to follow the standard set over thirty years ago in *Bowring v. Goodwin*, 551 F.2d 44 (4th Cir. 1977), which holds that there is no underlying distinction between an inmate's right to medical care for physical ills and its psychological and psychiatric counterpart. *Id*. at 47. An inmate is entitled to such treatment if a "[p]hysician or other health care provider, exercising ordinary skill and care at the time of the observation, concludes with reasonable certainty (1) that the prisoner's symptoms evidence a serious disease or injury; (2) that such disease or injury is curable or may be substantially alleviated; and (3) that the potential for harm to the prisoner by reason of delay or the denial of care would be substantial." *Id*. The *Bowring* Court further concluded that the aforementioned right to such

---

[2] While the Complaint raises an underlying medical/psychiatric claim, Chisum has sued employees of the Maryland Division of Correction ("DOC"), not medical personnel. In *Adamson v. Correctional Medical Services, Inc*., 359 Md. 238 (Md. 2000), the Court of Appeals of Maryland examined the legislative history of the Maryland Administrative Remedy Procedure ("ARP") grievance process and observed that it permitted a prisoner to submit a complaint for grievances against officials or employees of the Maryland DOC and Patuxent Institution through to the IGO. The state appellate court further noted that the IGO declines to hear prisoner grievances against private health care contractors. *Adamson*, 359 Md. 266-271.
The Court of Appeals concluded that the Maryland prisoner administrative remedy process does not encompass complaints against private medical providers under contract with the state. This court has adopted the *Adamson* analysis and found that administrative exhaustion may not be raised as an affirmative defense by healthcare providers at Department of Public Safety and Correctional Services' facilities. *See Calhoun v. Horning, et al.,* 2009 WL 2913418 (D. Md. 2009). Therefore, in this case, the DOC employees may raise an exhaustion defense.

treatment is based upon the essential test of medical necessity and not upon that care considered merely desirable. *Id*. at 48.

The unopposed exhibits illustrate that Chisum was admitted to the BMP after having been found to be a good candidate for the program based upon his lengthy infraction history.[3] *Id*., Ex. 1 at Holwager Decl.; Ex. 2 at pg. 4. After more than two years in the BMP, however; Chisum remained at the introductory level, or level one, until he was voluntarily removed from the BMP on April 23, 2009. Defendants allege that Chisum was consistently disruptive and disrespectful and received a number of rule infractions for masturbation while in the program. On April 6, 2009, Chisum received infractions for violating Division of Corrections Rules 201, 119, and 405, arising out of his assault on Correctional Officer II Adams. *Id*., Ex. 2. Chisum pleaded guilty to all rule infractions and was sanctioned with 600 days of segregation and the indefinite loss of visits. Holwager affirms that Chisum was not benefiting from the BMP, as illustrated by his failure to move through the five program levels. He further states that an assault on staff results in an inmate's removal from the BMP. Chisum was removed from the BMP on April 23, 2009, after assaulting a correctional officer. Holwager maintains that after completion of the segregation time, Chisum may request return to the program. *Id*., Ex. 1.

Defendants indicate that aside from the BMP, the Special Needs Unit ("SNU") is the only other structured program offered to NBCI inmates. It was established in May of 2009 to provide a

---

[3] According to Defendants' memorandum, the BMP is based upon the cognitive behavioral management program or Quality of Life program model. The Division of Correction may assign an inmate to BMP who is determined to be involved in or associated with the potential for violent behavior that threatens the safety of others or good order of a facility. In offering this explanation, Defendants' cite to DCM-100-001 § 19.D of the Correction Case Management Manual, Special Confinement Housing. They do not, however, furnish a copy of the manual in this case.

5

safe environment for inmates with serious mental health illnesses. Candidates for the SNU are identified by the psychology department and brought before a review committee to determine whether the individual meets the criteria for placement on the SNU tier. There is a three-step evaluation process. First, a determination is made whether a mental illness is present. Second, the severity of the mental illness is identified to decide whether it is sufficient to impair the inmate's functioning. Third, an assessment is made to determine whether the inmate has sufficient control to be in a modified general population setting.

Holwager evaluated Chisum and affirms that while he does suffer from a mental illness, his major impairment stems from a behavioral issue. He maintains that due to Chisum's lack of impulse control, he is not an appropriate candidate for the SNU. In addition, he states that Chisum's Axis I diagnosis of Schizophrenia, Paranoid Type is not severe enough to meet the SNU placement and his current lack of control would block him from participation in any program at this time. Holwager recommends that Chisum serve out his segregation time for staff assault and reapply for BMP. Paper No. 14, Ex. 1 at Holwager Decl. At present Chisum's psychological care continues to be monitored by the psychology department. NBCI Mental Health Care Professional Booth affirms that he is receiving psychopharmacological treatment (Trilafon, Cogentin, and/or Halodol), psychological assessment, and crisis intervention as needed. *Id.*, Exs. 3 & 4.

Based upon a review of the unrefuted exhibits presented by Defendants, it is abundantly clear that Chisum has failed to successfully challenge the aforementioned materials to show that prison personnel failed to evaluate his mental health, or were otherwise indifferent to his psychiatric or psychological needs. Chisum was admitted to the BMP in 2007 and remained so confined for over two years. He remained at level one of the program and made no advancement to any of the four higher levels of the BMP due to his recalcitrant adjustment behavior. His removal from BMP was

necessitated by his assault on a correctional officer. Defendants affirm and Chisum does not refute the fact that since his termination from BMP he has received frequent consultations and treatment for his Axis I psychological condition. Further, while Chisum was diagnosed with an Axis I disorder, mental health professionals determined that his disease is not severe and he is doing well on his current regimen. Chisum's behavioral and mental health problems are subject to the supervision and management of health care providers. For these reasons, the Court finds no Eighth Amendment deprivation in regard to his mental health treatment.

      A separate Order shall be entered reflecting the opinion set out herein.


Date:  <u>February 5, 2010</u>           _____/s/_____
                                              DEBORAH K. CHASANOW
                                              United States District Judge